UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NUR SHEIKH-ELMI,

          Petitioner,

v.

GARLAND, et al.,

          Respondent.

Case No. 2:24-cv-01048-TMC-TLF

ORDER DIRECTING ADDITIONAL BRIEFING AND RE-NOTING MOTION TO DISMISS

Petitioner Nur Sheikh-Elmi is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. Dkt. 1.

Petitioner asserts that he is entitled to release because his continued detention violates 8 U.S.C. § 1231(a)(6) and his due process rights. *Id.* at 3. He alleges his continued detention by ICE has become indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See id*. Petitioner is a citizen of Somalia, and alleges he has fully cooperated in attempts to obtain travel documents for Somalia – the country designated by the Immigration Judge ("IJ") for removal -- but he understands from his deportation officer and the Somali government that Somalia will not accept him because he has no remaining family relations in that country to confirm that he is a Somali citizen. *Id.*; Dkt. 9, Ex. D. He therefore contends his removal is not significantly likely to

ORDER DIRECTING ADDITIONAL BRIEFING AND RE-NOTING MOTION TO DISMISS - 1

occur in the reasonably foreseeable future. *Id*

On August 30, 2024, the Government filed a return memorandum and motion to dismiss. Dkt. 7. The Government concedes that Somalia is not currently issuing travel documents. *Id.* Yet the Government contends that, during the removal process, ICE became aware that petitioner had a Kenyan passport in a different name and now they are actively seeking to remove petitioner to Kenya. *Id.* The Government indicates ICE submitted a travel document request to Kenya to verify the validity of the passport and in August 2024, was advised the passport was active and would undergo further review by the Kenyan Embassy. *Id.*

The Government also submits evidence that on August 19, 2024, petitioner was served notice that: removal to Somalia was not presently possible, therefore in accordance with INA § 241(b)(2)(C) (codified as 8 U.S.C. § 1231(b)(2)(C)), DHS intended to disregard the designation to Somalia; Department of Homeland Security ("DHS") had obtained a photocopy of a Kenyan passport issued to petitioner and requested travel documents for the country of Kenya for petitioner's removal; and if petitioner feared persecution in Kenya then he could request asylum and related relief. Dkt. 7; Dkt. 8; Dkt. 9, Ex. F.

Petitioner was advised that "the standards for adjudicating claims arising under the Asylum may be found at 8 C.F.R. § 208.13" and "the standards for Withholding of Removal and withholding of removal under the Convention Against Torture may be found under 8 C.F.R. § 208.16." *Id.* He was advised that if he feared he would be persecuted or tortured upon removal to Kenya, DHS would move to reopen his removal proceedings for the sole purpose of considering that claim. *Id.* On the same day,

petitioner signed the document indicating he did not wish to request deferral of removal under the Convention Against Torture and that he understood DHS will proceed with applying for a travel document in order to remove him to Kenya. *Id.*

On September 20, 2024, petitioner filed a response opposing the Government's motion to dismiss, arguing that the Kenyan passport under the name Ibrahim Noor-Hussein was fraudulently obtained from a smuggler, that petitioner has no legal status in Kenya, and that, therefore, there is good reason to believe his removal is not significantly likely in the reasonably foreseeable future. Dkt. 10. Petitioner further acknowledges he signed the document stating he did not have a fear of returning to Kenya but states he did not understand the significance of the document. *Id.*

He indicates he was not provided an interpreter or the opportunity to consult an attorney. *Id.* Petitioner indicates that after his attorney subsequently explained the form to him, he asked the ICE officer to change his answer. *Id.* He indicates he was provided the form again and on September 6, 2024, marked on the form that he "refused to sign" and that he "refused to choose any of the statements." *Id.*

On September 27, 2024, the Government filed a reply in support of its motion to dismiss stating that on September 12, 2024, Kenya had issued a travel document with no expiration date. Dkt. 11. Citing to 8 U.S.C. § 1231(b)(2)(E)(vii), the Government also argues that "[t]here is no requirement that the removal be to a country where the person has lawful status." *Id.* at 3. The Government indicates petitioner has a Temporary Protected Status ("TPS") application pending with the United States Citizenship and Immigration Services ("USCIS") and cannot be removed while that application is pending. *Id.*

However, the Government indicates USCIS has advised ICE that it will complete the processing of the TPS application in the "near future" and that thereafter petitioner will either -- be granted TPS and be released from immigration detention – or, he will be removed to Kenya. *Id.* The Government acknowledges that although petitioner initially signed the document indicating that he did not "wish to request deferral or removal under the Convention Against Torture" and understood that DHS was seeking a travel document, he subsequently claimed he did not understand the notice. *Id.*

The Government indicates petitioner was subsequently re-served the notice and that petitioner, indicating he had spoken to an attorney, refused to sign, but "again made no claim of fear of removal to Kenya." *Id.*

On October 1, 2024, the Government filed a "notice of supplemental facts" stating that on September 27, 2024, petitioner sent an electronic kite to ICE's Office of Enforcement and Removal Operations ("ERO") claiming to be afraid of going to Kenya. Dkt. 13. The Government indicates that it has received Notices of Entry of Appearance as Attorney from *two different attorneys* concerning petitioner and is in the process of clarifying which of these lawyers represents petitioner for purposes of conferring regarding next steps relating to petitioner's claimed fear of removal to Kenya. *Id.*

At this point neither party has addressed whether or how this latest development – petitioner's claimed fear of removal to Kenya – may impact the proceedings in this Court. It is unclear whether petitioner's removal proceedings will be reopened to address this claim – as indicated by the initial notice served on petitioner (Dkt. 9, Ex. F.) – and whether there is any impact on petitioner's custody status and the proceedings in this Court.

ORDER DIRECTING ADDITIONAL BRIEFING AND RE-NOTING MOTION TO DISMISS - 4

Furthermore, in order to decide the petition and the pending motion to dismiss the Court finds it would benefit from additional briefing on the status of petitioner's TPS application and when the parties anticipate the application process to be completed.

Accordingly, the Court hereby ORDERS:

(1) On or before **November 15, 2024**, counsel for petitioner and counsel for the Government are directed to submit additional briefing to the Court regarding: (a) the status of petitioner's claims alleging fear of removal to Kenya, whether removal proceedings are being reopened, and/or whether petitioner's custody status or the currently pending federal habeas petition are impacted; (b) the status of petitioner's TPS application and when the parties anticipate the application process to be completed.

(2) The Clerk is directed to re-note the Government's motion to dismiss (Dkt. 7) to **November 15, 2024**.

Dated this 25th day of October, 2024.

Theresa L. Fricke
United States Magistrate Judge

ORDER DIRECTING ADDITIONAL BRIEFING AND RE-NOTING MOTION TO DISMISS - 5